IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:18-CR-419-2 |
| | ) | |
| GABRIEL DEQUAN HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Gabriel Harris, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Harris asks the Court to grant his motion based on the pandemic, prison conditions, and his medical conditions. Mr. Harris is not at substantial risk of complications from COVID-19 and his criminal history is extensive. Because he has not shown extraordinary and compelling circumstances and the § 3553(a) factors do not support a sentence reduction, the motion will be denied.

### I.     Procedural History

In July 2020, Mr. Harris filed a motion for compassionate release, Doc. 134, which the Court denied without prejudice to a renewed motion after exhaustion of administrative remedies. Doc. 135. Some months later, he filed another compassionate release motion, including evidence of exhaustion of administrative remedies. Doc. 147. The Court ordered the Probation Office to submit a report and appointed counsel to represent the defendant. Doc. 149. The defendant failed to communicate with counsel, Docs. 159, 160, and counsel was allowed to withdraw. Doc. 161. The government

opposes the motion for compassionate release, Doc. 164, and Mr. Harris has not filed a reply brief.

## II.    Background

After significant involvement with the juvenile justice system as a minor, including convictions for felony theft and robbery, Doc. 63 at ¶¶ 31–37,[1] Mr. Harris compiled a long adult criminal history in a short period of time. In 2013, he committed misdemeanor offenses for larceny and breaking and entering before being convicted of felony breaking and entering in 2014. *Id.* at ¶¶ 38–40. He received a probationary sentence, but it was revoked, *id.* at ¶ 40, and he was convicted of three more misdemeanor offenses—breaking and entering, larceny, and fictitious information to an officer. *Id.* at ¶¶ 41–42. After serving some time and being released, his post-release supervision was revoked. *Id.* at ¶ 40. Within two months of his release on August 6, 2015, *id.*, he unlawfully possessed a firearm and was soon convicted on state charges of felony possession of a firearm by a felon. *Id.* at ¶ 43. The state court imposed an active prison sentence of nine to 20 months. *Id.* After release, he again had his post-release supervision revoked. *Id.* He was released from state prison in late November 2017. *Id.*

The instant offense occurred in August 2018, less than a year later. *Id.* at ¶¶ 6–9. On August 21, Mr. Harris and two co-defendants broke into several residences in Orange County, stealing numerous items and causing significant property damage. *Id.* at ¶¶ 6–

---

[1] The Court adopted the presentence report in full without change, including the recommendations therein. Minute Entry 05/23/2019.

2

10. They stole four firearms from one home. *Id.* at ¶ 6. Mr. Harris also broke into another residence by himself. *Id.* at ¶ 10.

After indictment, Mr. Harris pled guilty to one count of felon in possession of firearms pursuant to a plea agreement. Minute Entry 01/08/2019; Doc. 24. At his sentencing hearing, the Court calculated that he was in criminal history category IV and that his sentencing guideline range was 46 to 57 months. Doc. 63 at ¶ 73. The Court sentenced Mr. Harris to 52 months imprisonment followed by two years of supervised release. Minute Entry 05/23/2019; Doc. 72 at 2–3.

At the time of his sentencing, Mr. Harris had many charges pending in state court. Doc. 63 at ¶¶ 46–50. Thereafter, he pled guilty to misdemeanor indecent exposure and four counts of felony breaking and entering. Doc. 152 at 2. He was sentenced to eight to 19 months incarceration to run concurrently with his federal sentence. *Id.*

In May 2020, Mr. Harris was admitted to the hospital and diagnosed with a pulmonary embolism, or blood clotting in the lungs. Doc. 165 at 159, 164.[2] The clotting caused accompanying pulmonary infarction, which is when part of the lung tissue dies from a lack of blood flow. *Id.* at 164; *see Pulmonary Embolism*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/pulmonary-embolism/symptoms-causes/syc-20354647 (last visited Oct. 27, 2021). Mr. Harris remains on medication to

---

[2] The medical records from the hospital state that Mr. Harris was living with his mother and sister when he was admitted in May 2020. Doc. 165 at 167. The records also note that he took out his IV line and left the hospital of his own accord. *Id.* at 165. Mr. Harris says that he was released from state prison on April 27, 2020, and placed on supervised probation with GPS monitoring only to be reincarcerated by the U.S. Marshal on June 19, 2020, due to "wrongful release." Doc. 134 at 1.

3

treat the condition.  Doc. 148 at 2; Doc. 165 at 77.  Mr. Harris also suffers from multiple mental health conditions, including bipolar disorder and depression.  Doc. 165 at 10.

The evidence indicates to the lay eye that Mr. Harris is receiving regular medical care while in BoP custody and there is nothing to indicate that the treatment is inadequate or substandard.  *See* Docs. 148, 151, 165.  In fact, the records show that Mr. Harris has refused necessary lab tests, has not reported to medical appointments, and has not complied with medical instructions.  Doc. 165 at 1, 3, 9, 14, 18.

The CDC advises that persons with chronic lung disease and mood disorders, such as depression, are at increased risk of severe illness from COVID-19.  *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (last visited Oct. 27, 2021).  The Court assumes without deciding that Mr. Harris's history of a pulmonary embolism constitutes a chronic lung disease.

In September 2020, Mr. Harris tested positive for COVID-19 but was asymptomatic.  Doc. 148 at 4.  He refused the COVID-19 vaccine when it was offered in March 2021.  Doc. 165 at 106.

Mr. Harris is now 28 years old, and his expected release date is April 21, 2024.  *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Oct. 27, 2021).  He is housed at FCI Williamsburg, which reports no inmates and one staff member are currently positive for COVID-19 and 201 inmates and 70 staff members have recovered since the start of the pandemic.  *See COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 27, 2021).  FCI

4

Williamsburg also reports that 196 staff members and 1236 inmates are fully vaccinated. *See COVID-19 Vaccine Implementation*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 27, 2021).

While incarcerated, Mr. Harris has had one disciplinary infraction for interfering with a security device. Doc. 152 at 1. He has completed one educational course and no vocational training. *Id*. If released, he plans to live with his girlfriend. *Id*. His girlfriend expressed hesitance when the probation officer contacted her, but she will allow Mr. Harris to live with her and assist his transition from incarceration. *Id*. at 2.

### III. Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

To proceed under § 3582(c)(1)(A), the movant must first satisfy the administrative exhaustion requirement. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). Then, he must show that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).

As the government agrees, Mr. Harris exhausted administrative remedies. Doc. 164 at 6. He asked the warden to file a compassionate release motion on his behalf, a request the warden denied. Doc. 147 at 7–8.

Mr. Harris has not shown extraordinary and compelling circumstances. Although his pulmonary embolism and mood disorder place him at a higher risk from severe illness if he contracts COVID-19, Doc. 165 at 10, 164, he is not currently at high risk to contract the disease. As noted *supra*, there are no inmates and one staff member currently positive at FCI Williamsburg, where he is housed, and roughly 80% of inmates at the facility are fully vaccinated. With case numbers low and vaccination rates high, the risk to Mr. Harris of contracting the disease is low. Increased exposure to the virus in a prison's congregate living situation is not itself an extraordinary and compelling circumstance. *See United States v Chavis*, No. 1:18-CR-481-3, 2021 WL 2784653, at *3 (M.D.N.C. July 2, 2021); *United States v. Dunham*, No. 3:06-CR-00456-FDW, 2021 WL 4188420, at *2 (W.D.N.C. Sept. 14, 2021). Mr. Harris could further reduce his risk of both contracting the disease and of severe consequences from the disease if he were vaccinated. *See Benefits of Getting a COVID-19 Vaccine*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited Oct. 27, 2021) (noting that "COVID-19 vaccines . . . help keep you from getting seriously ill even if you do get COVID-19").

Because Mr. Harris is not presently at high risk for contracting COVID-19, he is not at high risk for severe complications from the disease. As such, he has not demonstrated extraordinary and compelling circumstances based on the pandemic.

6

Mr. Harris also contends that prison conditions constitute extraordinary and compelling circumstances based on the period he spent in quarantine. Doc. 147 at 2–4. Mr. Harris states that the BoP placed him in quarantine when he tested positive for COVID-19 upon arriving at FCI Williamsburg. *Id.* at 2. He says that he spent roughly a month in quarantine and did not receive appropriate medical care during that period. *Id.* at 2–3.

A month in quarantine does not establish extraordinary and compelling circumstances. There is no evidence that the period of quarantine was unreasonable or that he has been subject to heightened restrictions outside of appropriate protective measures applying to most inmates. *See BOP Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 27, 2021). The medical records refute his claim about his medical care, as they reflect that Mr. Harris is receiving regular treatment for his medical issues. *See generally* Docs. 148, 151, 165. There is nothing to suggest that conditions at the facility constitute an extraordinary and compelling circumstance.

Even if Mr. Harris were able to show extraordinary and compelling circumstances, the § 3553(a) factors do not support release. He is currently incarcerated because he possessed a firearm after previous conviction of a felony; this is a serious offense. Minute Entry 01/08/2019; Doc. 24. Mr. Harris and his co-defendants broke into and entered multiple homes, and stole, *inter alia*, four firearms, including two semi-automatic rifles and one loaded revolver. Doc. 63 at ¶¶ 6–10. He has a substantial criminal record, especially given his age. Previous prison sentences did not deter him, and he has only

served roughly half of his sentence. A sentence reduction would not recognize the seriousness of the offense or protect the public.

Mr. Harris has one disciplinary infraction since being incarcerated but has completed only one hour of educational programming and has not completed any vocational training. Doc. 152 at 1. While the Court appreciates that the pandemic may have impaired his ability to complete programming, there is still insufficient evidence of rehabilitation, particularly when considering his criminal history.

Finally, Mr. Harris's release plan is not detailed. Although he has verified plans for housing, he has not provided any details about potential employment, obtaining medical treatment in the community, or a viable support network. *Id* at 1–2. He has had post-release supervision and probation revoked in the past, Doc. 63 at ¶¶ 36–37, 40, 43, and while the person with whom he proposes to live is willing to host him, it is fair to say she is not excited about it. Doc. 152 at 2.

Mr. Harris has not shown extraordinary and compelling circumstances and the § 3553(a) factors do not support a sentence reduction. The motion will be denied.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 147, is **DENIED**.

This the 28th day of October, 2021.

_____
UNITED STATES DISTRICT JUDGE